[Crim. No. 17355. First Dist., Div. One. Dec. 15, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
KENNETH RAY MILLS, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., Derald E. Granberg and Eugene W. Kaster, Deputy Attorneys General, for Plaintiff and Appellant.

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Jaime Alcabes, Patricia Salas Pineda and Carol Jean Ryan, Deputy State Public Defenders, for Defendant and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Mills was charged in the superior court with the rape of a teenage high school girl, one Tina, by force and violence and by threats of great and immediate bodily harm, in violation of Penal Code section 261, subdivisions 2 and 3.

Tina was ordered by the superior court to submit to a psychiatric examination in respect of her complaint against Mills. Upon her failure to do so the court, after a jury had been impaneled and sworn to try the cause, dismissed the charge.

The People have filed a notice of appeal "from the order of the court . . . dismissing the above-entitled action." Mills makes no contention relating to the appealability of the order.

The first issues submitted to us concern the rights of an alleged victim of a sexual crime and the obligations of a prosecutor, in relation to a court order that the alleged victim submit to an examination by a psychiatrist.

Evidence before the superior court disclosed the following.

Tina had been the victim of an unreported rape about a year before. It went unreported because "she was so intoxicated that she couldn't remember any of the facts . . . ." And about that time she had had an abortion and had been seeing a psychiatrist.

We continue with the evidence as stated by the brief of Mills. On the evening of the charged rape Tina went to the beach with Mills. They "had known each other for 'over a couple of months' and had gone out together on several occasions . . . . On each of these occasions, [Mills] had been a gentleman . . . . [¶] After the couple had arrived at the beach, [Mills] climbed into the back seat because it was 'more comfortable' . . . . He suggested that [Tina] join him . . . . Although she was 'a little worried about it' she joined him without much hesitation . . . . The couple listened to music, smoked marijuana and consumed 'angel dust—PCP.' . . . [Tina] said that the marijuana and angel dust made her nervous . . . . After approximately a half hour [Mills] unsuccessfully attempted to kiss her. After the third attempt, he undid the zipper of [Tina's] sweater, grabbed her by the shoulders and pushed her down onto the seat . . . . [Tina] began screaming and [Mills] pulled her back upright and told her 'to shut up' . . . . [¶] [Mills] then lectured [Tina] about sex, and told her that she had the attitude of a child . . . . [Mills] then grabbed her left arm and twisted it into the small of her back . . . . He told her not to move or else he would break her arm . . . . [Mills] released [Tina's] arm and began to remove her clothing . . . . He pushed [Tina] down on the seat and began to remove his clothing . . . . He then succeeded in having sexual intercourse with her . . . . [¶] Afterward [Mills] attempted to help [Tina] put on her clothes but she insisted on dressing herself . . . . At her request [Mills] drove her to a friend's house where she called the police . . . ."

A police officer had testified that upon Mills' arrest and an appropriate *Miranda* admonition and waiver, he had confessed to the offense against Tina: "[T]hat he had gone out with the victim on the night that she said it was, on the 13th of March; that they had driven to a beach in Pacific Grove; that they had a quantity of marijuana and phencyclidine, a drug, angel dust, and after that, that he had attempted to kiss [Tina] several

times and she refused him, and that he grabbed her arm and twisted it to her back; that he told her that—he made some threats to her, for example, that he was going to break her arm, and—let's see, he said something to the effect that he would hurt her or bash her head, but I can't exactly be sure what—exactly what words he used. [¶] Then he said that he forced her onto the seat; that he undressed her and he undressed himself; that he kissed on her breasts and on her vagina; that he put his finger in her vagina; that he was fully erect; that he had intercourse with her; and that afterwards he took her to the friend's home in Seaside where he left her off."

The record then establishes the happening of these events and circumstances in respect of, and following, the superior court's here questioned order.

When Tina was advised of the superior court's order that she submit to a psychiatric examination she "felt that it was like an insult." She said she didn't want to, and "if I didn't have to, I wouldn't go." "[H]er parents did not see why she should have to see a psychiatrist, and they were opposed to her seeing a psychiatrist as ordered by the court." "Her mother [was] upset with the court's order." Nevertheless, Tina was willing to visit the psychiatrist, *if she had to.* The prosecutor assigned to the case was advised of the wishes of Tina and her parents. He read to Tina an excerpt from the case of *Ballard* v. *Superior Court,* 64 Cal.2d 159, 177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]: *"The complaining witness should not, and realistically cannot, be forced to submit to a psychiatric examination or to cooperate with a psychiatrist."* (Italics added.) The prosecutor then told her that she "couldn't be forced to see a psychiatrist," but "he just kept telling me that it was my decision and that he didn't want to influence my decision." She wasn't told "not to go see a doctor." Indeed, "[h]e just gave me the doctor's name and number and said that if I wanted to, I could call her and make an appointment." Upon learning of the feelings of Tina and her parents about the ordered examination, the prosecutor had said "something like, it was wrong, or something, to be made to see a psychiatrist." Tina finally told the prosecutor: "I wasn't going to see the doctor, I had already made up my mind."

As a result of the foregoing, the court ordered Tina to "show why [the proceedings appear to have been later abandoned, or forgotten] she should not be held in contempt of this court."

As to the prosecutor, the court found that "the district attorney's office did nothing to enforce this order although they were the parties having more control over the witness involved," in "that she was influenced by [that office's] conduct which caused her to change her mind and caused her not to submit herself to a psychiatric examination." Such conduct, the court said, should be "severely" sanctioned "to prohibit this from occurring sometime in the future, . . ." The court then ruled "that the district attorney's office . . . has suppressed evidence" which, "if not contemptuous, is very serious conduct . . . ."

The jury, as noted, were impaneled and sworn. Thereafter, the court entertained Mills' motion for "sanctions." Following a hearing on the motion the court found that Tina's decision was "influenced by the conduct of the district attorney's office," which had "willfully and persistently act[ed] in such a way as to frustrate that court order," by advising Tina that "she has a choice as to whether she wants to comply or not," "thereby breaching their responsibilities under the due process clause." Then stating, "I can't allow interference with a lawful order of the court by the prosecution," so the sanction will be that Tina "will not be allowed to testify in this matter," even though "my order is probably going to result in a dismissal." Then concluding that the prosecution, without Tina's testimony, could not establish a "corpus of the crime," the superior court "upon its own motion, orders the matter dismissed pursuant to provisions of section 1385 of the Penal Code, . . ."

We turn our attention to the above mentioned holding of *Ballard v. Superior Court, supra,* 64 Cal.2d 159, which appears to be the controlling authority on the instant issues. There the high court said (p. 177): "The complaining witness [in a sex offense case] should not, and realistically cannot, be forced to submit to a psychiatric examination or to cooperate with a psychiatrist. In the event that the witness thus refuses to cooperate, however, a comment on that refusal should be permitted."

This holding expresses a policy of our law that the victim of a sex crime should not *unnecessarily* be subjected to further harassment or distress in criminal proceedings against her alleged violator. The policy springs primarily from consideration of one's dignity and of humanity. It also reflects widespread acknowledgment that such crimes often go unreported, usually because of the outraged victim's fear of further embarrassment, shame, or mortification.

While *Ballard* v. *Superior Court* holds that the complaining witness of a sex offense case "should not . . . be forced to submit to a psychiatric examination," it also holds "that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a necessity for an examination." (64 Cal.2d, pp. 176-177.) Reconciling these holdings, we perceive the high court's meaning to be that a trial court's power is limited to the ordering of a psychiatric examination of an alleged sex offense victim, under pain of *appropriate* sanctions such as comment to the jury on her refusal to cooperate, or perhaps even the disallowance of her testimony. But the permissible sanctions allowed by that court do not extend to *forcing* the victim to submit to such an examination by the court's contempt process, or otherwise. We hold accordingly.

■ We next inquire into the criticized conduct of the prosecutor of the instant case. He was patently, and reasonably, under no duty to withhold or conceal from Tina knowledge of her right to refuse a psychiatric examination, or to discourage her exercise of that right. To the contrary, we opine, his duty to the court, and to Tina, was to fairly advise her of her right, and of the possible or probable consequences of its exercise. Our examination of the record discloses no flaw in the prosecutor's conduct; certainly he had not "suppressed evidence," nor may it be said that his conduct "if not contemptuous, is very serious conduct . . . ."

We have not left unconsidered Mills' insistent argument that the prosecutor went too far when, as testified by Tina, he said "something like, it was wrong, or something, to be *made* to see a psychiatrist." (Italics added.) That statement, if made, was a fair paraphrasing of *Ballard* v. *Superior Court*'s holding that one in Tina's position "should not . . . be *forced* to submit to a psychiatric examination." (Italics added.)

■ We are brought to the question whether abuse of discretion attended the superior court's dismissal of the action.

It requires no argument that dismissal of a felony charge by the court without a trial on the merits is an extreme sanction against the People; this is particularly true where, as here, there is available to the prosecution evidence that the accused has fully confessed to his crime. And *Ballard* v. *Superior Court* asserts that the *necessity* for a psychiatric examination "would generally arise only if little or no corroboration

supported the charge" (64 Cal.2d, p. 177), a circumstance unapparent here.

Another consideration in the exercise of a trial judge's discretion in such a matter is the debated question whether a psychiatrist's testimony, or report, of an examination of a witness is of substantial value, on the issue of credibility, to a jury which has observed the demeanor and heard the testimony of the subject witness and of all other witnesses of the case.*

And, as indicated, it is notable that, without mention of the extreme sanction of dismissal here imposed by the trial court, *Ballard* v. *Superior Court* suggests that: "In the event that the witness thus refuses to cooperate, however, a comment on that refusal should be permitted." (64 Cal.2d, p. 177.)

There is yet another relevant consideration. Two days before the trial, and after the judicial suggestions of "contempt," and "suppression of evidence," and possible "dismissal" of the action had been made, Tina did telephone the psychiatrist for an appointment. She was told the doctor rejected the case, "[b]ecause she couldn't get a report in on time." The trial court wasn't, it said, "too much influenced by the fact that she later made an attempt to contact Dr. Ellis. Now it's too late. . . . It's time for trial."

For these several reasons we are of the opinion that the trial court's dismissal of the action constituted an abuse of discretion.

We find nothing in the case of *People* v. *Davis*, 20 Cal.App.3d 890 [98 Cal.Rptr. 71], supportive of the order of dismissal here under review. There, the record established that the prosecutor wrongfully dissuaded

---

*" 'A psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify issues; the testimony may be distracting, time-consuming and costly. (See generally Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach* . . . [1960] 48 Cal.L.Rev. 648; McCormick on Evidence . . . [1954] 100; Comment, *Psychiatric Evaluation of the Mentally Abnormal Witness* . . . [1950] 59 Yale L.J. 1324.)' " (*People* v. *Russel*, 69 Cal.2d 187, 195, fn. 8 [70 Cal.Rptr. 210, 443 P.2d 794] [cert. den., 393 U.S. 864 (21 L.Ed.2d 132, 89 S.Ct. 145)]; *Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 174-175, fn. 10.)

the crime victim from participating in a psychiatric examination, in large part by *a gross misstatement of fact*. As here, the trial court dismissed the action "because the conduct of the deputy district attorney in wilfully suppressing evidence had deprived respondent of a fair trial." (P. 895.) The order of dismissal, *which was there made before trial*, was reversed and the cause remanded "to the trial court for determination of whether that suppression of evidence has irreparably impaired respondent's right to a fair and speedy trial." (P. 892.)

The remaining question concerns our disposition of the appeal.

■ The order of dismissal of the action was, as noted, unlike that of *People* v. *Davis, supra*, and made after the jury had been " ' "duly impaneled and sworn and charged with the case; . . ." ' " Mills had therefore previously been placed in jeopardy. (See *Richard M.* v. *Superior Court*, 4 Cal.3d 370, 376 [93 Cal.Rptr. 752, 482 P.2d 664]; *Curry* v. *Superior Court*, 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345].) Such jeopardy, with exceptions which we shall presently discuss, will bar a retrial for the same offense. (See Cal. Const., art. I, § 15—"Persons may not twice be put in jeopardy for the same offense, . . .")

The exceptions are pointed up by *Cardenas* v. *Superior Court*, 56 Cal.2d 273, 276 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371], in this manner: "Once the jury is charged with the defendant's deliverance '[h]is jeopardy is real and he cannot be again subjected to jeopardy unless the jury be discharged without rendering a verdict, *by his consent,* or *upon some legal necessity* resulting from physical causes *beyond the control of the court.*' "

Elaborating on the concept of a mistrial or dismissal with the accused's consent, and after jeopardy has attached, the court in *Curry* v. *Superior Court, supra,* 2 Cal.3d 707, 713, stated: "[A]ffirmative conduct by the defendant may constitute a waiver [of double jeopardy] if it clearly evidences consent . . . and such *a waiver will a fortiori be implied when the defendant actually initiates or joins in a motion for mistrial . . . .*" (Italics added.)

In his written motion two days before the jury were sworn Mills argued: "If the court finds that the prosecution acted in bad faith then *dismissal would be the appropriate penalty . . . .*" (Italics added.) After the jury were sworn, Mills' attorney continued his urging of the prosecutor's bad faith, accusing him of "utter contempt," "willful actions," "torpedo-

ing" the trial court's order, and "persistently" frustrating it. He then said: "Certainly, the sanction of suppression of testimony or even dismissal is not unknown to the law. All the informant cases, Eleazer and all those cases, *the sanction was dismissal for certain actions by the prosecution. And I think it's the only appropriate one here* because what's to really . . . discourage them from doing this again in the future when future Ballard motions are granted, from engaging in these dilatory tactics in obstructing an order of this court?" (Italics added.)

From these several comments it will reasonably be deemed that Mills consented to the dismissal of his action, and "actually initiate[d] or join[ed] in [the] motion for mistrial . . . ." Under the holding of *Curry v. Superior Court, supra,* 2 Cal.3d 707, 713, a waiver of double jeopardy will a fortiori be implied.

The judgment of dismissal is reversed; the cause is remanded to the superior court for trial and such further proceedings as may be proper.

Newsom, J., concurred.

**RACANELLI, P. J.**—I concur in the judgment and its supporting reasons but do not interpret the majority's broad disclaimer of permissible sanctions[1] (itself unnecessary to the decision) to mean that the dictum stated in *Ballard* (64 Cal.2d 159, at p. 177) announces an absolute prohibition against use of the court's inherent power of contempt to enforce a valid order of examination in appropriate cases. *Ballard* simply recognizes that, realistically, a witness may neither be compelled to submit to nor cooperate in the examination and suggests an appropriate *trial* remedy in the event of an inexcusable refusal. However, it provides no authority for the implied assertion that the historic power of contempt may not be invoked in the rare case involving a wilful, deliberate and contumacious disobedience. (See Code Civ. Proc., § 1209, subd. 5; *In re McKinney* (1968) 70 Cal.2d 8, 10-11 [73 Cal.Rptr. 580, 447 P.2d 972]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 138, pp. 2960-2961.) Such a broad pronouncement would seriously erode the inherent but limited power of a court of general jurisdiction to enforce an otherwise appropriate order as authorized by law. (Cf. *People v. Russel* (1968) 69 Cal.2d 187 [70 Cal.Rptr. 210, 443 P.2d 794].) While compulsion for an unjustified defiance is neither desirable nor possible, the authorized sanctions for wilful noncompliance should not thereby be impliedly restricted. (See, e.g., Code Civ. Proc., § 1218.) A contrary interpretation

[1]At page 308 majority opinion.

would significantly undermine the purpose and efficacy of a valid and sparingly employed *Ballard* order notwithstanding a clearly demonstrated showing of wilful noncompliance.

It is to be emphasized, however, that no such factual showing is demonstrated herein. To the contrary, it is difficult to understand what compelling circumstances indicated a "necessity" for the mandated examination. (See *People* v. *Russel, supra,* 69 Cal.2d 187, 193.) The underlying rationale supporting the psychiatric examination of a complaining witness in a sex crime prosecution is to permit the jury to consider medical testimony bearing upon the accusing witness' credibility in determining the truth of an otherwise uncorroborated charge. *Ballard* teaches that a trial court should exercise its discretion to grant an order of examination *only* where there is *little or no corroboration* supporting the charge and the defense properly raises the issue of the witness' mental or emotional condition relevant to veracity. (*Ballard* v. *Superior Court, supra,* 64 Cal.2d 159, 176-177.) The record herein is devoid of such requisite showing of necessity. Indeed, in light of the defendant's *voluntary confession* fully corroborating the complaining witness' account of the criminal abuse perpetrated upon her, granting of the order in the first instance constituted a palpable abuse of discretion; such an invalid order is neither enforceable by contempt nor can it serve as a basis for any other permissible sanction.

A petition for a rehearing was denied January 12, 1979, and respondent's petition for a hearing by the Supreme Court was denied February 8, 1979. Mosk, J., was of the opinion that the petition should be granted.