George Gary **PICKENS**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 6829.

Court of Appeals of Alaska.

Jan. 20, 1984.

---

James E. Gorton, Lynch, Farney and Crosby, Anchorage, for appellant.

Kristen Young, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

George Gary Pickens was convicted of sexual assault in the first degree. AS 11.-41.410. On appeal, Pickens challenges his conviction on two grounds. First, he contends the trial court erred in denying his pretrial motion for a psychiatric examination of the victim, V.C. Second, Pickens argues that the evidence was insufficient to support the jury's verdict. Pickens also challenges his sentence, arguing that the sentencing court erred in considering prior incidents of sexual assault and in sentencing him to thirteen years with five years suspended. We affirm.

## FACTS

On July 23, 1981, at approximately 3:00 a.m., V.C. went to Chilkoot Charlie's, a bar in Anchorage, with a group of friends. While she was at the bar, V.C. met Pickens and his friend, Larry McLachlan. She talked to them several times during the night and at one point went with Pickens to the parking lot to have some cocaine.

When the bar was closing, V.C. discovered that her friends had left without her. She scanned the parking lot for an acquaintance who might give her a ride home. It was raining heavily. Pickens and McLachlan were standing outside the bar. They offered to give V.C. a ride home, and she accepted.

After V.C. got into the car, Pickens asked her if she wanted some more cocaine. V.C. said she did, and they drove to a friend's trailer. When they arrived at the trailer, Pickens went inside, purportedly to get the cocaine. He came back to the truck and V.C. went into the trailer to use the bathroom. By the time V.C. finished using the bathroom, McLachlan had left in the truck. Pickens was in the bedroom, and he asked V.C. to sit with him on the bed. She refused. V.C. asked another man in the trailer to give her a ride home. The man said that he did not have a car. Without speaking to Pickens, V.C. left the trailer and started walking home in the rain.

When Pickens realized that V.C. had gone, he followed her. He caught up with V.C. and convinced her to return to the trailer, stating that his friend had come back with a car and that he would give her a ride home. On their way back to the trailer, as they approached a condominium construction site, Pickens grabbed V.C., put one hand over her mouth, and carried her into the partially completed building. There he raped her.

At the approximate time of the sexual assault, a nearby resident heard a woman screaming, "no, stop it" and "leave me alone." This witness became concerned and called the Anchorage Police Department. Another local resident also heard a woman scream, "leave me alone," followed by a man saying, "shut up." He made a separate report to the police.

Police officers arrived at the scene in response to these reports and began searching the area. They found Pickens and V.C. in the partially constructed condominium. When V.C. saw the officers, she cried out that she had been raped. Pickens

immediately ran out of the building, and the officers followed him. After a two-block chase and a ten to twenty minute struggle, they restrained Pickens. Pickens gave the officers a false name.

Pickens was charged with first-degree sexual assault and convicted by a jury. Superior Court Judge Seaborn J. Buckalew sentenced Pickens to thirteen years with five years suspended. This appeal followed.

## REQUEST FOR PSYCHIATRIC EVALUATION OF V.C.

Prior to trial, Pickens requested that V.C. be compelled to submit to a psychiatric evaluation. He based the request on his right to discovery and his right to cross-examine witnesses at trial. Superior Court Judge Victor D. Carlson denied Pickens's motion. Pickens contends that Judge Carlson's ruling was incorrect.

In *Braham v. State*, 571 P.2d 631, 640 (Alaska 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 410 (1978), the supreme court affirmed the denial of a defense request for psychiatric evaluation of a crime victim, stating: "It is within the discretion of the trial court whether to order a psychiatric examination of the mental condition of a witness." (Footnote omitted.) We conclude that Judge Carlson did not abuse his discretion when he denied Pickens's motion.

Pickens relies primarily on *Ballard v. Superior Court*, 64 Cal.2d 159, 49 Cal. Rptr. 302, 410 P.2d 838 (1966). In *Ballard*, the California Supreme Court established a test for determining whether the complaining witness in a sexual assault case should undergo a psychiatric examination. After rejecting the "polar extremes" of an absolute prohibition and an absolute requirement of a psychiatric examination, the *Ballard* court concluded:

> We ... believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a necessity for an examination. Such necessity would generally arise only if little or no

corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity .... [W]e have accepted a middle ground, placing the matter in the discretion of the trial judge.

*Id.* 49 Cal.Rptr. at 313, 410 P.2d at 849.

Pickens contends that there was no corroboration of V.C.'s sexual assault and that he therefore met the necessity requirement of *Ballard*. Pickens asserts that "[n]o one testified that they actually saw the prosecutrix being carried, subdued, undressed, or raped." However, Pickens admitted that he carried V.C. into the empty condominium and that he had sexual intercourse with her. His only defense at trial was that V.C. consented. V.C.'s testimony was corroborated by two local residents who heard screaming and separately reported the incident to the police department. Moreover, medical evidence and the testimony of the police officers who responded to the scene were consistent with the allegation of rape. We find ample evidence corroborating V.C.'s testimony. *See Anthony v. State*, 521 P.2d 486, 494 (Alaska 1974); *Dimmick v. State*, 473 P.2d 616, 617 (Alaska 1970); *Oxenberg v. State*, 362 P.2d 893, 897 (Alaska 1961); *Miller v. State*, 629 P.2d 546, 548–49 (Alaska App.1981).

We also conclude that Pickens failed to make an adequate showing of a potential relationship between V.C.'s psychiatric condition and her veracity as a trial witness, the second prong of the *Ballard* test. Pickens relied exclusively on an affidavit of his counsel stating that V.C. threatened suicide two months prior to the sexual assault and that she had previous emotional problems. The affidavit also noted that V.C. had used cocaine and was intoxicated at the time of the offense. On the basis of this affidavit, Pickens argues that psychiatric testimony would have aided the jury in assessing how alcohol and cocaine might have affected V.C.'s credibility. Pickens does not indicate any specific reason to

believe that V.C.'s prior emotional problems might have affected her veracity.

■ The general assertions that V.C. had previously suffered emotional problems of an unspecified nature and that she used cocaine and alcohol before the offense do not directly call into question her psychiatric condition or the relationship of her condition to her veracity as a witness.[1] Defense counsel's speculation that a psychiatric evaluation of the victim might turn something up does not amount to a showing of necessity justifying a court-ordered evaluation. We think that, at the very least, it would have been incumbent upon Pickens to make a specific showing of good cause to believe, first, that V.C.'s ability to perceive events accurately or to relate those events truthfully was substantially impaired and, second, that this impairment was of such a nature that a psychological evaluation would be likely to confirm its existence or to provide material information as to its scope.

As noted in *People v. Mills*, 151 Cal.Rptr. 71, 74, 87 Cal.App.3d 302, 307 (1979), the *Ballard* test should be strictly applied:

> [T]he policy [requiring strict application of *Ballard*] springs primarily from consideration of one's dignity and humanity. It also reflects widespread acknowledgement that such crimes often go unreported, usually because of the outraged victim's fear of further embarrassment, shame or mortification.

■ We agree with the California court's concern regarding requests for psychiatric evaluations of sexual assault victims. Although the Alaska Supreme Court has not established a standard for evaluating such requests, it has been sensitive to the privacy interests of witnesses generally and reluctant to permit inquiry into a witness's mental health history absent a clear indica-

tion of relevance. For example, in *Gunnerud v. State*, 611 P.2d 69 (Alaska 1980), the court held that the defendant was not entitled to disclosure of an existing psychiatric report concerning an adverse witness. The court held:

> We agree with the trial court that it would be an unwarranted infringement of [the witness's] privacy, and therefore inconsistent with the protection of persons, to grant access to [the witness's] private medical records unless the material was relevant.

*Id.* at 72 (footnote omitted). *See Spencer v. State*, 642 P.2d 1371, 1375–76 (Alaska App.1982). We perceive no reason to subject the victims of sexual assaults to a less protective rule than that applied to the victims of other types of offenses. Accordingly, we believe the same caution reflected in *Gunnerud* and *Spencer* is appropriate where the defense requests the psychiatric evaluation of a sexual assault witness. In no respect are victims of sexual assault inherently less credible than are the victims of any other crime. While persons accused of sexual assault are entitled to disclosure of relevant evidence concerning the complaining victims, care must be taken to assure that requests for psychiatric evaluation will in fact yield relevant evidence and that such requests have not been submitted to harass and embarrass the victim, in the hope of discouraging effective prosecution.[2]

We conclude that Pickens has failed to meet either prong of the *Ballard* test. He has failed to make a specific showing of need for a psychiatric evaluation, and he has failed to demonstrate that V.C.'s testimony was uncorroborated or otherwise untrustworthy. Accordingly, we hold that the denial of Pickens's motion for a psychi-

---

1. At trial Pickens cross-examined V.C. as well as the police officers and medical personnel about V.C.'s state of intoxication and her use of cocaine. A psychiatric examination was unnecessary to bring these factors to the attention of the jury.

2. In this case, Pickens did not simply request disclosure of psychiatric reports that had already been prepared for reasons unrelated to his case. His motion involved an even greater potential for invasion of V.C.'s privacy than that in *Gunnerud* and *Spencer*, since in those cases the psychiatric evaluations had already been conducted.

atric examination was not an abuse of discretion.

## MOTION FOR NEW TRIAL

After the jury found him guilty of sexual assault in the first degree, Pickens moved for a new trial on the ground that the weight of the evidence was contrary to the jury verdict. Alaska R.Crim.P. 33. Judge Buckalew denied this motion. Pickens claims this ruling was mistaken.

"[T]he trial court, in deciding a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence, may weigh the evidence and determine the credibility of witnesses." *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977) (footnote omitted). Ruling on Pickens's motion required Judge Buckalew to exercise his subjective view of the weight and credibility of the testimony and evidence presented at trial. We must show considerable deference toward Judge Buckalew's decision, since he personally heard the witnesses at trial and observed their demeanor while testifying. We find that there was substantial evidence of guilt and therefore conclude that the denial of Pickens's motion was not an abuse of discretion. *Dorman v. State*, 622 P.2d 448, 454 (Alaska 1981); *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977).

Although the state witnesses and defense witnesses offered different accounts of the events leading to the offense, Pickens admitted that he carried V.C. into the half constructed condominium and that he had sexual intercourse with her. V.C. testified that she did not consent to having sexual intercourse with Pickens. Officer Robinson testified that he was dispatched to investigate citizen reports of a woman screaming in the area of the condominium construction. When Robinson entered the condominium he saw Pickens holding V.C. by her shoulders. V.C. told Robinson she had just been raped, and Pickens immedi-

ately fled. He had to be pursued and restrained by the officers.

The determination of Pickens's guilt hinged on an evaluation of the credibility of the divergent accounts of the incident given by Pickens and V.C. Considering V.C.'s testimony in conjunction with the evidence tending to corroborate it, we conclude that Judge Buckalew did not abuse his discretion in finding, after independently considering the testimony, that the weight of the evidence supported the jury's guilty verdict.

## EVIDENCE OF PRIOR CRIMINAL CONDUCT AT SENTENCING

Pickens's third point on appeal involves the admissibility of verified evidence of prior criminal conduct at his sentencing. On January 26, 1982, the state filed a notice of verified prior criminal conduct involving an incident that occurred on January 4, 1981. On February 4, 1982, Pickens moved to suppress evidence of the January 1981 incident, contending that it was not verified. On February 5, 1982, Judge Buckalew indicated that he was inclined to deny Pickens's motion but stated that he would do further research on the motion. On February 17, 1982, the state filed an additional notice of verified prior criminal conduct involving an incident on July 4, 1981. On February 22, 1982, Judge Buckalew signed a written order denying Pickens's February 4, 1982, motion. Although Pickens's attorney noted at sentencing that Pickens did not agree with the state's portrayal of either of the incidents of prior criminal conduct, Pickens never moved to suppress reference to the July 4, 1981 incident.

### January 4, 1981 Incident

The state contended that Pickens raped S.D. on January 4, 1981. This allegation was verified by affidavits from Gladys Peper, Don Williams, and Officer Zylstra.[3]

---

**3.** Peper indicated that on January 4, 1981, she heard a loud banging on her front door. When she opened the door she saw a naked woman, S.D., partially covered by a bath towel. S.D.

appeared upset and immediately told Peper that she had been raped. Peper called the police. S.D. told the police that a man with a large white dog forced her into a blue Chevrolet pick-

Pickens maintains that this incident of criminal conduct is not adequately verified since the state did not present an affidavit from the victim and all the statements of the victim are hearsay. He relies on *Holden v. State*, 602 P.2d 452, 459 n. 11 (Alaska 1979), which states, "the former rape was verified by the sworn testimony of the victim...." Pickens argues that since the state did not offer a sworn statement of the victim of the January 4, 1981, incident, it was not verified. We disagree.

*Holden* does not hold that a sworn statement of the victim is a prerequisite for verification of a prior incident of criminal conduct. Hearsay information may be sufficiently verified to permit consideration at sentencing. *Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977), *aff'd on rehearing*, 576 P.2d 982, 983 (Alaska 1978).

The police report, the exhibits, and the affidavits of Peper, Williams, and Officer Zylstra verify that Pickens sexually assaulted S.D. on January 4, 1981. Absent an express, testimonial denial by Pickens of this incident or a specific request to confront and cross-examine the victim, consideration of this verified incident of prior criminal conduct was proper. *See Dexter v. State*, 672 P.2d 144, 145 (Alaska App. 1983); *Willard v. State*, 662 P.2d 971, 977 (Alaska App.1981).

*July 4, 1981 Incident*

Pickens also challenges the trial court's reliance on evidence of an attempted sexual assault on July 4, 1981. Prior to sentencing, the state presented the affidavit of J.H., in which J.H. indicated that Pickens attempted to rape her on July 4, 1981.[4]

Since Pickens did not object to the admission of evidence of the July 4 incident, he did not preserve this issue for appeal. We believe that the July 4 incident was adequately verified by the sworn statement of J.H. *See Holden v. State*, 602 P.2d at 459 n. 11.[5] Accordingly we find no plain error.

## EXCESSIVE SENTENCE

Judge Buckalew sentenced Pickens to thirteen years' imprisonment, with five years suspended. Pickens appeals his sentence as excessive. At the time of Pickens's offense, first-degree sexual assault was a class A felony; the maximum sentence was twenty years' imprisonment; the presumptive sentences were ten years for a second felony offender and fifteen years for a third felony offender. In addition, a six-year presumptive sentence applied to first felony offenders who used a firearm during commission of the offense. Former AS 12.55.125(c). Pickens contends that, since this was his first felony conviction, his sentence should not have exceeded the

up truck and took her to trailer number 92. Once inside the trailer, the man tied her hands together, choked her until she was unconscious and raped her. Officer Zylstra stated in his affidavit that he observed large bruises on S.D.'s neck and that S.D. identified Pickens as her assailant from photographs police found in the trailer. Don Williams, Pickens's roommate, confirmed that Pickens was driving Williams's blue Chevrolet pickup and had a large white dog at the time of the assault.

4. The facts of this incident are very similar to those for which Pickens was convicted. On July 4, 1981, Pickens offered to give J.H. a ride home from Chilkoot Charlie's. Pickens took her to his trailer where he grabbed her and forcibly removed some of her clothing. J.H. believed she was able to escape sexual penetration by Pickens because she had known him for over fourteen years. She noted in her affidavit that Pick-

ens's behavior was irrational and not consistent with his past behavior. After J.H. convinced Pickens to release her, Pickens told her that if she did not have sexual intercourse with him she would have to walk home. J.H. walked home.

5. Pickens also contends that Judge Buckalew improperly used the evidence of prior sexual assaults to enhance his sentence. Judge Buckalew referred to the verified prior criminal conduct stating, "I am concerned about these other situations which the state has brought to my attention." Since these incidents were verified, this concern was not unwarranted. Judge Buckalew did not place undue emphasis on these incidents; rather, he focused on the seriousness of the present offense, the difficulties in rehabilitation, and the need for deterrence of Pickens and others. *See Davis v. State*, 635 P.2d 481 (Alaska App.1981).

presumptive term for a second offender. In *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), we held that "[n]ormally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender." *See also Peetook v. State*, 655 P.2d 1308, 1310–12 (Alaska App.1982). In reviewing Pickens's sentence we note first that, although he was sentenced to thirteen years' imprisonment, five years were suspended. Thus, his actual time to serve, eight years, is less than the presumptive term of ten years for second offenders. *See Tazruk v. State*, 655 P.2d 788, 789 (Alaska App.1982). *See also Friedberg v. State*, 663 P.2d 558, 559 (Alaska App.1983).

We next note that Dr. Aaron Wolf, a psychiatrist, testified at the sentencing hearing that Pickens had three problem areas: a medical problem stemming from a head injury, which could cause violent seizures; a personality problem, characterized by over-control and under-control of emotions; and a behavioral problem, consisting of drug and alcohol abuse. According to Dr. Wolf, Pickens's medical problem could be controlled through prescription drugs, but his psychological and substance abuse problems would require specialized counseling. After hearing Dr. Wolf's testimony, Judge Buckalew concluded that "in Mr. Pickens's case I think that rehabilitation is going to be long and difficult." Judge Buckalew also noted the seriousness of Pickens's offense, the fact that Pickens continues to maintain that V.C. consented to sexual intercourse, and the importance of deterring Pickens as well as others from committing sexual assaults. Finally, Judge Buckalew properly relied on the evidence of Pickens's prior involvement in sexual assaults. *Davis v. State*, 635 P.2d 481, 487 (Alaska App.1981).

Judge Buckalew's sentencing decision was based on an appropriate consideration of the *Chaney* criteria. *See* AS 12.-55.005. After an independent review of the sentencing record, we conclude that the sentence of thirteen years with five years suspended was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.