**Lee L. JONAS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–2032.

Court of Appeals of Alaska.

May 12, 1989.

---

Blair McCune, Asst. Public Defender and John B. Salemi, Acting Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Lee L. Jonas was convicted, following a jury trial, of five counts of sexual assault in the second degree, AS 11.41.420(a)(2)(A), and two counts of harassment, AS 11.61.-120(a)(5). On appeal, Jonas asserts that the trial court erred by failing to grant his motion for psychiatric evaluation of the four complaining witnesses, by admitting various types of testimony, by failing to intervene in the prosecution's cross-examination of Jonas, and by conducting a pretrial conference outside of Jonas' presence. We affirm.

## FACTS

During 1985 and 1986, E.D., C.J., M.H., and A.M., four mentally retarded women, resided at the Lamplighter III Apartments in Anchorage. The four women participated in a semi-independent living program for adults with developmental disabilities, operated by Hope Cottages, a social services agency in Anchorage. This program permitted the participants to live in apartments in the community, rather than in institutions, by giving them the supervision and assistance they needed in daily living.

E.D., C.J., A.M., and M.H. had all previously been institutionalized. E.D., A.M., and M.H. had known each other for many

years. During the relevant period, A.M. and M.H. shared an apartment, E.D. lived with her husband, and C.J. shared an apartment with a male friend.

E.D. and her husband moved into their apartment in February, 1985, after signing a one-year lease. In July 1985, E.D. contacted Kevin Nelson, a substitute caseworker at Hope Cottages, and told him that Jonas, the manager of the Lamplighter III Apartments, was having sex with her. At the same time, she told Nelson that she wanted to move out of her apartment in order to be closer to the grocery store and her church. At a subsequent visit, when Nelson asked E.D. if she had "had sex" with Jonas, E.D. said no. No police report was made, and E.D. remained at the same apartment.

In January 1986, E.D. told her regular caseworker at Hope Cottages, Karen Masek, that Jonas "raped [her] a lot." Masek subsequently educated E.D., C.J., A.M., and M.H. about "sexual safety issues." Immediately afterwards, A.M., M.H., and C.J. reported that Jonas had had some form of sexual contact with them. All four women then gave statements to the police.

E.D. alleged that Jonas raped her in the exercise room, the laundry room, the storage room, a vacant apartment, her own apartment, and Jonas' office. E.D. claimed that, in most of these instances, Jonas raped her both orally and vaginally.

C.J. alleged that Jonas had opened her apartment door with a passkey and had inserted his penis into her vagina while she was lying in bed. She also alleged that, on another occasion, he had touched her genitals with his penis while she was taking a bath.

M.H. claimed that Jonas tried to take off her clothes, that he touched her waist, and that he told her he wanted to make love with her.

A.M. said that Jonas entered her apartment without knocking and went into the bathroom, where she was taking a bath. On another occasion, Jonas entered the apartment without warning and touched A.M. on the thighs. On a third occasion, Jonas came into A.M.'s bedroom while she was in bed and touched her thighs and knees.

Jonas was charged with six counts of sexual assault in the second degree for allegedly engaging in sexual penetration with E.D. and C.J., and with three counts of harassment for allegedly subjecting C.J., M.H., and A.M. to offensive physical contact. Counts 1 through 6 charged violations of former AS 11.41.420(a)(2)(A), which prohibited sexual penetration with a person who the offender knows:

is suffering from a mental disorder or defect which renders the person incapable of appraising the nature of the conduct under circumstances in which a person who is capable of appraising the nature of the conduct would not engage in sexual penetration.

Jonas was tried before a jury in September 1986. The trial ended in a mistrial. Jonas was retried in January 1987 before Judge Joan M. Katz. The jury found Jonas guilty of five counts of second-degree sexual assault and two counts of harassment.

## PSYCHIATRIC EVALUATION OF COMPLAINING WITNESSES

Jonas' initial argument on appeal is that the trial court erred in failing to grant his motion for psychiatric evaluations of the complaining witnesses. Prior to the first trial, Jonas filed a written motion for psychiatric evaluations of E.D., C.J., A.M., and M.H. The motion specified that the defense wanted an evaluation in these areas: ability to distinguish "fact from fiction" and "susceptibilities to suggestions of facts;" knowledge of sexual function and sexual acts; and attitudes toward sexual acts.

At an omnibus hearing conducted before Superior Court Judge Rene Gonzalez, Jonas indicated that the motion for psychiatric evaluations was a companion motion to a motion to interview the complaining witnesses. Jonas' counsel explained that either the evaluations or the interviews were needed to help in preparing to cross-examine the witnesses, because counsel lacked

experience "in questioning or dealing with mentally retarded people."

The state opposed the motion, arguing that Jonas had not established that psychiatric evaluations were necessary, as required under *Pickens v. State*, 675 P.2d 665 (Alaska App.1984). The state claimed that previously conducted psychological evaluations of the witnesses, which had been furnished to Jonas, contained sufficient information.

Judge Gonzalez stated that he would take the motion under advisement and issue a ruling after examining the earlier psychological reports and reports concerning the incident made by counselors at Hope Cottages. On August 28, 1986, Judge Gonzalez issued an order denying discovery of the previously prepared psychological evaluation reports, and granting discovery of the Hope Cottages incident reports.[1] The order made no mention of the court-ordered evaluations requested by Jonas.

No express ruling was ever made on Jonas' motion for additional psychiatric evaluations. Jonas never reminded Judge Gonzalez that the examination motion was still pending, nor did he object to going to trial with the issue unresolved. When the case was transferred from Judge Gonzalez to Judge Buckalew immediately prior to trial, Judge Buckalew asked both parties whether there were any pending motions. Jonas' trial attorney did not mention the present motion, nor did she renew the motion after the first trial ended in a mistrial.

█ The state argues that Jonas abandoned his motion for psychiatric evaluation by failing to request a ruling. An alleged error occurring during the trial of a case must be raised by a party and ruled upon by the trial court before this court will consider it on appeal. *Thomas v. State*, 391 P.2d 18, 20 (Alaska 1964). In *Thomas*, the supreme court held that the defendant

had forfeited his motion for a mistrial by allowing the case to go to judgment without insisting that the trial court rule on his motion. *Id.* at 20–21. Similarly, Jonas forfeited his motion for psychiatric evaluations by failing to request a ruling.

Jonas claims that he was justified in construing Judge Gonzalez' order of August 28, 1986, as a denial of his motion for psychiatric evaluations. According to Jonas, the fact that the court did not appoint a psychiatrist and that Judge Gonzalez denied discovery of the existing psychological reports makes it clear that his request for additional evaluations was denied.

Jonas' interpretation of Judge Gonzalez' order is unreasonable. The unambiguous language of the order makes it clear that the court is denying discovery of the earlier evaluations, not the motion for future evaluations. The court's denial of discovery of the earlier evaluations does not logically indicate an intent to deny the ·motion for future evaluations. In its opposition to Jonas' motion, the state argued that additional psychiatric evaluations were unnecessary because Jonas could glean ample information from the already existing psychological reports. However, Judge Gonzalez stated that he was denying discovery of the earlier evaluations because they "do not contain any relevant information." If anything, this finding that the earlier reports were irrelevant would support Jonas' contention that additional psychiatric evaluations were necessary.

Finally, we reject Jonas' argument that Judge Gonzalez' failure to appoint a psychiatrist was the equivalent of an express denial of his motion.[2] We therefore agree with the state that Jonas abandoned his motion requesting psychiatric evaluations.

█ We must nonetheless determine whether the trial court's failure to *sua sponte* order the evaluations was plain error. A finding of plain error is appropriate

---

1. Judge Gonzalez was apparently unaware that the state had already disclosed both sets of reports to Jonas.

2. Jonas claims that the state should have informed Judge Buckalew that the motion was still pending and that by not doing so the state

waived the abandonment argument it now asserts. However, it would appear to be the duty of the proponent of the motion, and not of the adverse party, to ensure that a ruling is made. *See Thomas v. State*, 391 P.2d at 20.

only if the error affects a substantial right and is obviously prejudicial. *Marrone v. State*, 653 P.2d 672, 676 (Alaska App.1982).

Whether or not to order a psychiatric evaluation of a complaining witness in a sexual assault case is a matter within the trial court's discretion. *Pickens v. State*, 675 P.2d 665, 668 (Alaska App.1984). In *Pickens*, we adopted a two-part test for determining when the defendant in a sexual assault case is entitled to an order requiring the complaining witness to undergo a psychiatric examination:

> The trial judge should be authorized to order the [complaining witness] to submit to a psychiatric examination if the circumstances indicate a necessity for an examination. Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity.

*Pickens*, 675 P.2d at 668. *See also Daniels v. State*, 767 P.2d 1163 (Alaska App.1989). This test is strictly applied, in order to protect the privacy interests of victims. *Pickens*, 675 P.2d at 669.

Applying the *Pickens* test, we find that Jonas has not established any error, much less plain error. Although Jonas has arguably satisfied the first prong of the *Pickens* test, he has failed to make the requisite showing that a psychiatric evaluation was necessary to provide information on the veracity of complaining witnesses.

At the omnibus hearing, the state argued that the stories of the four complaining witnesses sufficiently corroborated each other to prohibit examinations under the *Pickens* test. Given the fact that Jonas' defense rested on the theory that the four alleged victims knew each other well and had decided together to fabricate charges against Jonas, the similarity of their stories should not be relied on as corroborating evidence. Since there was no other corroborating evidence, Jonas appears to have satisfied the corroboration prong.

However, prior to trial, Jonas made virtually no showing of need. Jonas' request for an evaluation presupposes that a psychiatric evaluation would be useful in evaluating the witnesses' credibility. Granting the motion under these circumstances would suggest that a court-ordered evaluation is necessary and available whenever the witness in a sexual assault case is mentally retarded. Since Jonas made no attempt to show that a psychiatric evaluation would be likely to yield relevant evidence, the trial court's "denial" of Jonas' request was not an abuse of discretion under the *Pickens* test.

■ Moreover, even if Jonas were able to establish error, he could not show prejudice. At the omnibus hearing, Jonas stated that the psychiatric evaluations were needed to assist in cross-examination, and that the evaluations might not be necessary if he had an opportunity to interview the complaining witnesses. Jonas had an opportunity to extensively cross-examine all four complaining witnesses at the first trial, which ended in a mistrial. Because the first trial gave Jonas the opportunity to observe how the witnesses would respond to cross-examination, the psychiatric evaluations were presumably unnecessary to assist Jonas in cross-examining the witnesses in the second trial. Jonas did not renew his motion prior to the second trial.

Jonas makes the additional argument that the *Pickens* test is inapplicable in the present case. Jonas was charged with

> sexual penetration with a person who the offender knows ... is suffering from a mental disorder or defect which renders the person incapable of appraising the nature of the conduct under circumstances in which a person who is capable of appraising the nature of the conduct would not engage in sexual penetration....

Former AS 11.41.420(a)(2)(A). Jonas now argues that because the mental condition of the complaining witness is an element of the crime, psychiatric examination of the complaining witness should be the rule rather than the exception in prosecutions under this statute.

We find merit in Jonas' contention that strict adherence to the *Pickens* standard

may not be appropriate in cases in which psychiatric evaluations are sought for reasons other than assessing a witness' credibility. Particularly when, as here, an offense is defined to require proof of a mental disorder or defect, the presence or absence of evidence corroborating the victim's version of events would appear to have little bearing on the issue of whether or not a psychiatric evaluation is warranted. Accordingly, a strong argument can be made that, in such cases, a psychiatric evaluation should be ordered upon an adequate showing that the evaluation would be likely to disclose material evidence bearing on the victim's mental condition, regardless of the presence or absence of corroboration.

However, we need not here decide to what extent, if any, *Pickens* should be modified when the complaining witness' mental condition is an element of the offense. This issue has not previously been litigated in Alaska. Other states that have considered similar issues have reached disparate conclusions. *Compare State v. Garcia*, 94 N.M. 583, 613 P.2d 725 (N.M. App.1980) *with People v. Taylor*, 180 Cal. App.3d 622, 225 Cal.Rptr. 733 (1986). Clearly, competent judges could differ on whether such examinations should be granted without the showing of need required under *Pickens*. Since a plain error is one that would be obvious to a reasonable judge, Jonas has failed to establish plain error. *See Marrone*, 653 P.2d at 675–76.

Because the rule now proposed by Jonas is not a settled rule, it could not have been obvious to the trial court. Moreover, even if it were a settled rule, it would not have been obvious to the trial court that it was applicable to Jonas' case. Jonas did not claim, either at the hearing or in his written motion, that the examinations were needed to determine whether the complaining witnesses were "incapable of appraising the nature of [Jonas'] conduct." Former AS 11.41.420(a)(2)(A). In fact, Jonas conceded, prior to trial, that the witnesses were all mentally retarded. Moreover, at trial, Jonas defended on the theory that the witnesses had fabricated the offenses. He never disputed that their mental condition rendered them incapable of meaningful

consent. Since the need for psychological evaluations on an uncontested element of the offense is far from obvious, the trial court's failure to order evaluations was not plain error. *See Carman v. State*, 658 P.2d 131, 137 (Alaska App.1983).

Jonas further argues that the need for psychiatric evaluations became greater once the state indicated that it intended to call an expert witness "for purposes of testifying to mental and developmental capabilities of mentally retarded adults." The state filed notice of its intent to call Dr. Michael Rose on August 21, 1986, while Judge Gonzalez still had the motion for psychiatric examinations under advisement.

In *Anderson v. State*, 749 P.2d 369 (Alaska App.1988), this court found that the defendants had established the right to court-ordered psychiatric examinations of the complaining witnesses

> when the very real concerns regarding these witnesses' competency are added to the state's substantial reliance on psychological testimony regarding behavioral patterns as a means of identifying sexually abused children....

*Id.* at 371. Jonas argues that because expert testimony was offered, the need for psychological examination of the victims was much greater than it would otherwise have been.

Jonas' argument that this court's holding in *Anderson* required the judge to order psychiatric examinations has no merit. *Anderson* does not require that psychiatric evaluations be ordered whenever an expert witness testifies in a sexual assault case. In *Anderson*, a strong showing of need had been made even without the expert testimony. We concluded that the state's reliance on expert testimony, when added to the demonstrated relevance of a psychiatric evaluation on the issue of competence, made it error to deny the defendant's request for an evaluation. We find no plain error in the denial of independent psychiatric evaluations.

### FAILURE TO STRIKE DR. ROSE'S TESTIMONY

■ Jonas next contends that the court erred in failing to strike the expert testimo-

ny of Dr. Michael Rose. Because Jonas concededly failed to object to Rose's testimony at trial, we decide this issue under the plain error standard.

At trial, Dr. Rose testified about general characteristics of mentally retarded individuals. Rose had never evaluated any of the witnesses, although he had read previous psychological evaluations of each witness. Rose's testimony on direct examination was in the following areas: ability to remember and access information; social functioning and interactions with people of normal intelligence; sexual behavior and attitudes, including responses to sexual victimization. On cross-examination, Jonas elicited testimony about a mentally retarded adult's ability to tell the truth and to lie.

Jonas now argues that Rose's testimony treads on "dangerous ground" because the jury could have interpreted it as proof of an element of the crime, namely that the witnesses suffered from "a mental disorder or defect" under AS 11.41.420(a)(2)(A). In particular, Jonas objects to Rose's testimony that mentally retarded adults tend to be "passive" and "compliant," as well as sexually conservative. Jonas argues that this testimony was inadmissible under the guidelines for general background testimony established in *Rodriquez v. State,* 741 P.2d 1200 (Alaska App.1987). *See also Anderson v. State,* 749 P.2d 369 (Alaska App.1988); *Colgan v. State,* 711 P.2d 533 (Alaska App.1985).

Jonas has failed to make the necessary showing to establish plain error. Even assuming, for argument's sake, that Rose's background testimony concerning personality traits of retarded adults was inadmissible, Jonas has failed to show prejudice. Jonas' defense rested on the theory that Jonas had had no sexual contact with the alleged victims, not that they engaged in consensual sexual activity with him. Jonas never contested the fact that the alleged victims were mentally retarded, nor did he argue that they would have been capable of "appraising the nature of [his alleged sexual] conduct." In fact, in closing argument, Jonas' counsel made no mention of this element of the offense, instructing the

jury only that they would need to find, beyond a reasonable doubt, that Jonas engaged in sexual activity with the witnesses. It is clear from the record that Jonas effectively conceded this element at trial. Therefore, the trial court did not commit plain error in admitting Dr. Rose's expert testimony.

## PRIOR CONSISTENT STATEMENTS

■ Next, Jonas argues that it was plain error to admit prior consistent statements made by E.D. The state called Karen Lindsey after E.D. had testified. Lindsey was a massage therapist at the Captain Cook Hotel who occasionally gave E.D. massages at the hotel athletic club. She testified that on one occasion, when E.D. was dressing after a massage, she told Lindsey that Jonas had assaulted her:

A: ... [S]he was putting her clothes back on, and she was putting her bra on, and she grabbed her own breast and said that the person that had been the manager of the apartment where she lived had done that to her. And then she—I believe she pulled down her pants, or unzipped her pants at that point, and pointed to her crotch area and said that she had been—that her manager had—I don't know what words [E.D.] would have used to describe—how I interpreted it was that she was describing his penis, and the fact that he had gray pubic hair. I remember her saying that she had—that intercourse had happened, that he had forced himself upon her.

Q: Did she tell you how she felt about that?

A: ... I asked her and she said that she thought it was horrible and that she hated it, and she seemed to think it was disgusting. And it seems at the time that it happened more than once, and I'm not sure how—this was about a year ago when she told me this—I'm not sure how recently it happened.

Lindsey also testified that she felt "outraged" by what E.D. told her. On cross-examination, Lindsey stated that E.D. had

told her about the assault in January or February, 1986.

The state's next witness, Karen Masek, was E.D.'s case manager at Hope Cottages. Masek testified that she was on maternity leave during July and August of 1985, when E.D. first reported that she had been sexually assaulted. Masek did not discuss the alleged assaults with E.D. until January 8, 1986, when E.D. told Masek that Jonas had raped her. At trial, Masek testified that E.D. had telephoned her and said "my landlord, he rape me a lot, he rape me in the closet." Masek testified that E.D. did not mention any desire to move at the time.[3]

Jonas now argues that E.D.'s prior consistent statements to Lindsey and Masek were inadmissible under Alaska Rule of Evidence 801(d)(1)(B). Generally, three requirements must be met before a prior consistent statement by a witness may be introduced: the prior statement must be consistent with the declarant's trial testimony, the statement must be admitted to rebut an express or implied charge of recent fabrication or improper influence or motive, and the statement must be shown to have been made before the improper influence or motive arose. *Nitz v. State,* 720 P.2d 55, 64 (Alaska App.1986).

Jonas apparently concedes that the first two requirements were met. He claims, however, that the statements were inadmissible because they were made after E.D.'s motive to fabricate had already arisen.

E.D.'s alleged motive to fabricate was that she wanted to move out of the Lamplighter III Apartments for reasons of convenience but was bound by a lease that would not expire until the end of February 1986. This alleged motive arose sometime prior to July 1985, when she informed Kev-

in Nelson of Hope Cottages that she wanted to move. During that conversation, E.D. made her first report that Jonas had had sex with her. E.D. apparently did not make any further report about the alleged sexual assaults until her report to Masek in January 1986.

A second alleged motive to fabricate arose after E.D. made her report to Masek and moved out of the Lamplighter III Apartments. During cross-examination, the state's expert, Dr. Rose, acknowledged that a mentally retarded person would be likely to want to please authority figures and, in an effort to do so, might lie about events. In its closing argument, the defense argued that E.D. persisted in her story even after she had moved, in an effort to please the police and the district attorney. This would explain why E.D. persisted in her story during the trial, despite the fact that her original motive to fabricate, her desire to move, no longer existed.

The state now argues that E.D.'s initial motive to fabricate was virtually extinguished by January 1986, when she reported the incident to Masek and Lindsey, because her lease was due to expire the next month. On the other hand, since the police were not yet involved, E.D.'s second motive to fabricate had not yet arisen. Thus, according to the state, E.D.'s prior consistent statements were made at a time when she had no reason to fabricate.

We find the state's argument persuasive. E.D.'s prior consistent statements were clearly relevant to rebut Jonas' claim that E.D.'s testimony was fabricated. Moreover, because the statements were made at a time when E.D. was not subject to an improper influence or motive,[4] the statements have the same probative value as

---

**3.** Masek also testified that C.J., A.M., and M.H. all reported that Jonas had sexually assaulted them. The reports were made after Masek had discussed "sexual safety" with the women. Although Jonas concedes that these were the alleged victims' first reports, he argues that they are nonetheless not admissible under the "first complaint doctrine" of *Greenway v. State,* 626 P.2d 1060 (Alaska 1980), because the reports were not "fresh." However, the fact that these reports were made a significant time after the

alleged assaults goes to their weight rather than their admissibility. *Nitz v. State,* 720 P.2d 55, 63 (Alaska App.1986).

**4.** At trial, Jonas argued that E.D.'s motive in renewing her report of sexual assault in January 1986 was still her desire to get out of her lease. Jonas pointed out that E.D. did not know the months of the year and could not count to five, and argued that E.D. would have been unaware that her lease would soon expire. The state, in turn, argued that E.D. had a good sense when

statements made before the improper influence or motive arose.

Even if we were to treat the statements as having been made after E.D.'s motive to fabricate arose, we would nonetheless find them admissible. Although a statement which was made after the improper influence or motive arose cannot be used as substantive evidence, it is admissible to rehabilitate the declarant's credibility when it is relevant "to rebut an . . . implied charge . . . of recent fabrication or improper influence or motive," A.R.E. 801(d)(1)(B), and when the statement's probative value outweighs its potential prejudicial effect. We find that both of these requirements have been met. Although, as a rule, the jury must be instructed that such statements may only be considered for the purpose of determining the declarant's credibility at trial, Jonas never requested a limiting instruction. Consequently, he cannot argue for reversal on this basis. *Robinson v. State*, 593 P.2d 621, 624 (Alaska 1979); *Nitz*, 720 P.2d at 68–69 n. 6.

■ Jonas also argues that Lindsey's statement that she felt "outraged" by what E.D. told her was inadmissible. While the state concedes that, had an objection been made, it should have been sustained, it contends that there was no plain error.

We agree with the state. In order to establish plain error, Jonas must show that the error was "substantially prejudicial." *Potts v. State*, 712 P.2d 385, 390 (Alaska App.1985). It is unlikely that Lindsey's expression of outrage, standing alone, would have affected the jury's verdict. Therefore, we find that plain error has not been shown.

## ADMISSIBILITY OF LAY WITNESS OPINION

■ The state's first witness at trial was Melanie Duzynski, a member of the professional staff at Hope Cottages who had supervised the four complaining witnesses. Her testimony introduced the four women to the jury, describing their capabilities and limitations. Jonas did not object to her testimony, but on appeal he alleges that it was plain error for two separate reasons.

First, Jonas claims that Duzynski should not have been allowed to testify about the women's "social functioning level," "expressive language ability," and I.Q. levels, as reflected in Hope Cottages' records, because she was not qualified as an expert. According to Jonas, Duzynski's testimony was inadmissible opinion testimony by a lay witness.

Duzynski explained what is meant by the terms "social functioning level" and "expressive language ability." She expressed an opinion as to the social functioning level and expressive language ability of each of the complaining witnesses. For example, she stated that E.D.'s social functioning level was that of "approximately a nine year old" and her expressive language ability was that of a person "perhaps four years old."

In response, the state argues that, had Jonas made a timely objection, the state could have qualified Duzynski as an expert. At trial, Duzynski testified that she had a bachelor's degree with an emphasis on psychology and sociology, and that she had worked in a professional capacity with mentally retarded people for over seven years. The record does not indicate what experience Duzynski had in evaluating the social functioning and expressive ability of mentally retarded adults. It is entirely conceivable, however, that the state could have qualified Duzynski as an expert had Jonas objected.[5]

Jonas has not shown how he was in any way prejudiced by the improper testimony.

---

her lease would expire. Masek had testified that E.D. had a calendar showing the date her lease would expire, and that she and E.D. would mark off the days until the time E.D. could move. Whether or not E.D. was aware that her lease was almost over, and consequently whether E.D. still had a motive to fabricate in January 1986, would have been a matter for the jury to decide.

5. As the state argues, Duzynski was testifying as the custodian of business records when she recited the women's I.Q. scores. The proper foundation was laid for the business records hearsay exception under Alaska Rule of Evidence 803(6).

At trial, Jonas never suggested that the complaining witnesses were not mentally retarded. Moreover, a review of the complaining witnesses' testimony indicates that there is virtually no possibility that the jury could have determined that the women were not mentally retarded, or that they did not function on the level of children. Finally, the properly admitted expert testimony of Dr. Rose, while pertaining to the social and intellectual abilities of mentally retarded adults in general, would also have led the jury to conclude that the complaining witnesses functioned at a lower level than a "normal" adult.

■ Jonas also objects to Duzynski's testimony because she testified about the personality of each woman. Jonas contends that not only was Duzynski not qualified to offer this type of testimony, but that it was "thinly disguised character evidence" and was therefore inadmissible under Alaska Rule of Evidence 404(a).

Duzynski testified that E.D. is "pleasant," "cooperative," and "friendly;" that C.J. is "friendly" and "happy;" that A.M. is usually "cooperative" but sometimes "grumpy;" and that M.H. is usually "not very pleasant."

Jonas' claim of plain error has no merit. Because Jonas never objected to the evidence, the state never explained what the purported relevance of the evidence was. It is not at all clear that it was offered to show that the complaining witnesses acted in conformity with the described traits. Therefore, it is not clear that the testimony would have been inadmissible even if a proper objection had been made. Once again, Jonas does not explain how he was prejudiced by admission of this evidence. Even if the evidence was improperly admitted, it strains credulity to suggest that it could have had an appreciable effect on the jury's verdict. *See Van Hatten v. State,* 666 P.2d 1047, 1057 (Alaska App.1983).

### ARGUMENTATIVE CROSS–EXAMINATION

■ Jonas next argues that "the court should have, *sua sponte*, protected him from the 'harassment' of the district attorney's questioning." Jonas claims that the prosecutor's cross-examination of him, when considered together with the other errors in this case, constituted plain error.

Jonas contends that the prosecutor harassed him by argumentative cross-examination in nine different areas. Jonas does not claim that these areas were improper subjects for cross-examination. Apart from asserting that he was "harassed" by the state's questioning and that the cross-examination was "incredibly argumentative," he does not explain why the questioning should be considered improper.

Moreover, throughout cross-examination, the judge was responsive to defense objections and appeared to be sympathetic to Jonas. When Jonas did object, his objections were, for the most part, sustained. The judge cut off the prosecutor's line of questioning and told her to move on to something else several times, either in response to an objection or *sua sponte.* At one point, the prosecutor's questioning provoked the judge into making a remark sympathetic to Jonas.

Because the judge sustained most of Jonas' objections and intervened on her own to cut off the prosecutor's "harassment" of Jonas, there does not appear to be any error, much less plain error. However, even if there were error, Jonas cannot satisfy either prong of the plain error test. The judge's sympathetic remark shows that she found the cross-examination to be irritating, and that it caused her to be sympathetic to Jonas. It is possible that Jonas' counsel felt that the state's badgering cross-examination would tend to alienate the jurors and evoke sympathy for her client, and that she allowed the state to persist as a trial tactic. *See Potts,* 712 P.2d at 394. Because the cross-examination evoked sympathy from the judge and quite possibly the jurors, Jonas cannot establish prejudice.

### JONAS' ABSENCE FROM CONFERENCE

■ Jonas' final claim is that he was deprived of his right to be present at every

stage of the proceedings. During the trial, Jonas raised a double hearsay objection to testimony regarding E.D.'s initial report to Kevin Nelson. In response, the state claimed that the testimony was admissible as a first report under *Greenway v. State*, 626 P.2d 1060 (Alaska 1980). At this point, Judge Katz said:

This is exactly the issue that I asked you both about before we started the trial, was there going to be any issue like this, and you both assured me no.

The complete transcript of the second trial contains no record of any conference or proceeding at which this issue was raised.

In his brief on appeal, Jonas raised the possibility that a proceeding had taken place outside his presence. The case was remanded to Judge Katz so that she could make findings concerning what, if anything, happened outside Jonas' presence. Judge Katz held an evidentiary hearing on the issue on September 16, 1988, at which both trial attorneys were present. The judge found that she had had a conversation with trial counsel, outside of Jonas' presence, at which she had asked if either party anticipated raising evidentiary issues, specifically hearsay, which had not been resolved in the first trial. It was Judge Katz' intention to address such issues prior to trial, on the record, outside the presence of the jury, and in Jonas' presence. However, neither party anticipated raising new evidentiary issues.

 A defendant has a constitutional right to be present at every stage of the trial. *See Illinois v. Allen*, 397 U.S. 337,

338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Dolchok v. State*, 639 P.2d 277 (Alaska 1982). In addition, two Alaska Criminal Rules further guarantee this right. *See* Alaska R.Crim.P. 38(a) and 22(a). However, absence of the defendant from a stage of the proceedings is not always prejudicial error. *Dolchok*, 639 P.2d at 284.

In this case, the error appears to have been harmless beyond a reasonable doubt. The sole purpose of the conference was to alert Judge Katz to any anticipated evidentiary issues that had not been raised at the first trial, so that such issues could be addressed prior to trial. No such issues were raised. Moreover, when, despite counsel's earlier assurances that no such issue would be raised, a hearsay issue was raised at trial, that issue was considered on its merits. Under the circumstances, it is apparent that Jonas' presence at the brief pretrial colloquy could have in no way aided in his defense. *See Dolchok*, 639 P.2d at 284 (defendant's absence from a pretrial conference in which the defense waived a jury trial and the parties stipulated to the substantive standard to be used for the insanity defense was harmless error). We therefore reject Jonas' claim.

The conviction is AFFIRMED.