**Russell G. JOHNSON and John J. Johnson, Appellants,**

v.

**STATE of Alaska, Appellee.**

Nos. A–4879, A–4914.

Court of Appeals of Alaska.

Feb. 17, 1995.

Hearing Denied May 22, 1995.

Thomas A. Ballantine III, Anchorage, for appellant Russell G. Johnson.

Linda K. Wilson, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant John J. Johnson.

William H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Russell G. Johnson and his brother John J. Johnson were indicted for kidnapping, sexual assault in the first degree, sexual assault in the second degree, and assault in the third degree. AS 11.41.300(a)(1)(C); AS 11.41.410(a)(1); AS 11.41.420(a)(1); AS 11.41.220(a)(1). A jury convicted both brothers of kidnapping and John Johnson of first-degree sexual assault.[1] Superior Court Judge Rene J. Gonzalez sentenced John Johnson to a composite term of ten years' imprisonment. Judge Gonzalez sentenced Russell Johnson to eight years with three years suspended.

---

1. The state dismissed the charges of second-degree sexual assault against both John and Russell. The jury deadlocked on the first-degree sexual assault charge against Russell and on the third-degree assault charges against both John and Russell.

In this consolidated appeal, the Johnsons challenge their convictions, arguing that the trial court erred in restricting their cross-examination of L.K., the victim, concerning two past reports of sexual assault and concerning her current involvement in a physically abusive relationship with another man. The Johnsons further argue that the court erred in excluding evidence of a false claim of paternity that L.K. had previously filed. Russell Johnson individually contends that the trial court erred in refusing him discovery of a presentence report dealing with an offense previously committed by L.K. John Johnson separately claims that his sentence is excessive. We affirm as to John Johnson and remand for further proceedings as to Russell Johnson.

On the night of August 21–22, 1992, L.K. left a bar in downtown Anchorage and began to walk home, hitchhiking as she went. John and Russell Johnson stopped to offer her a ride. Later that night L.K. reported that she had been raped. L.K. claimed that, instead of driving her home, the Johnsons abducted her at gunpoint, drove her to a remote location, and raped her. According to L.K., she escaped her abductors after the assault and ran to a nearby house, where she reported the crime.

John Johnson's subsequent trial testimony differed from L.K.'s version of events. According to John, when he and Russell stopped to offer L.K. a ride, L.K. got into their truck willingly, later asked to go with them to a party, and eventually had consensual sexual intercourse with him; John claimed that Russell had no sexual contact with L.K. Russell, who did not testify, relied on the version of events presented by his brother.

Prior to trial, the state moved for a protective order to prevent the Johnsons from questioning L.K. about two sexual assaults that she had reported more than thirteen years previously, in January of 1979. The state argued that inquiry into the prior reports was barred by Alaska's rape shield statute, AS 12.45.045, and was inadmissible under Alaska Rule of Evidence 404(a)(2).

In response, the Johnsons argued that both of L.K.'s 1979 reports of sexual assault were similar to her current report and were thus relevant to L.K.'s credibility. The Johnsons theorized that the similarity of all three reports and the fact that the two 1979 reports had never been substantiated or prosecuted—due in part to a lack of cooperation on L.K.'s part—tended to establish L.K.'s involvement in a pattern of false reports of sexual assault. The Johnsons insisted that, to enable them to establish the relevance of this line of inquiry, the court should at the very least allow them to call L.K. outside the presence of the jury for questioning about the truthfulness of her 1979 reports.

Judge Gonzalez granted the state's motion for a protective order and declined to allow the Johnsons the opportunity to question L.K. about the 1979 reports. The judge concluded that the 1979 reports did not establish a pattern of false reports on L.K.'s part and that they were otherwise irrelevant to the issues of L.K.'s bias, prejudice, or motive to testify falsely. The Johnsons argue on appeal that Judge Gonzalez erred in precluding them from questioning L.K. In the Johnsons' view, the error deprived them of their constitutional rights to confrontation, compulsory process, and due process.

■ ■ We find no merit to this claim. Although this court has previously suggested that evidence of past false reports of sexual assault may under some circumstances be admissible to discredit an alleged victim's current claims of sexual assault, see, e.g., *Jager v. State*, 748 P.2d 1172, 1177 n. 3 (Alaska App.1988), we have consistently held that the proponent of such evidence bears the threshold burden of establishing the falsity of the past reports. See *Covington v. State*, 703 P.2d 436, 442 (Alaska App.1985), modified on other grounds on reh'g, 711 P.2d 1183 (Alaska App.1985); see also *Daniels v. State*, 767 P.2d 1163, 1167 n. 3 (Alaska App. 1989).

Here, the Johnsons failed to meet this burden. Neither alone nor in conjunction with the current accusation do the 1979 reports give rise to a fair inference that L.K. has engaged in a pattern of false reports of sexual assault. Nor have the Johnsons cited

any persuasive authority for their claim that L.K. should have been compelled to answer questions *in camera* about the past reports when no colorable grounds had been presented to establish that the reports were false. In our view, the off chance of discovering falsehood did not vest the Johnsons with the right to demand that L.K. testify *in camera.*

In arguing that they should at least have been given the opportunity to explore *in camera* the truthfulness of L.K.'s past reports, the Johnsons rely on the commentary to A.R.E. 404. Rule 404(a)(2)(ii) requires that the admissibility of evidence reflecting on a sexual assault victim's character be determined by a hearing conducted outside the presence of the jury; the rule goes on to provide that "[t]he hearing may be conducted *in camera* where there is a danger of unwarranted invasion of the privacy of the victim." In addressing this provision, the commentary recommends that "[e]xamination and cross-examination of witnesses should be permitted" during such *in camera* hearings. Alaska Rules of Evidence Rule 404(a) commentary at 454 (West 1994).

The Johnsons emphasize this recommendation. Yet the commentary expressly qualifies its recommendation by adding that witnesses should be examined *in camera* only "when necessary." *Id.* To say that cross-examination should be permitted when necessary to allow the defendant to make a record is not the same as to say that cross-examination should be permitted whenever the defendant wishes to search for discoverable information. By advising trial courts to allow *in camera* examination of witnesses "when necessary," the commentary makes it reasonably clear that its drafters did not view cross-examination within the context of an *in camera* hearing as a discovery device—that the drafters did not mean to give the defense the right to an on-demand deposition of the complaining witness.

For purposes of determining when *in camera* examination of a sexual assault victim should be deemed "necessary," it is useful to consider the commentary's approach on the ultimate issue of admission of evidence relating to the character of a sexual assault victim. The commentary adopts a "reasonable probability" standard to govern the issue of admissibility:

> If there is a reasonable probability that character evidence might legitimately help the defense, invasion of the privacy of the victim is warranted. If the evidence is of minimal probative value and is not reasonably likely to assist the defense, invasion of the privacy of the victim is unwarranted.
>
> *Id.*

■ Although it may be arguable that the type of showing that would suffice to establish necessity for *in camera* examination of a sexual assault victim should be more lenient than the "reasonable probability" standard that governs the ultimate issue of admissibility, the commentary's concern for the privacy of sexual assault victims and the balancing approach it adopts to accommodate this privacy interest strongly counsel that, at a minimum, *in camera* examination of a sexual assault victim should be deemed necessary only upon a threshold showing of good cause—that is, upon proof of a colorable ground to believe that character evidence favorable to the defense actually does exist and will be disclosed by the requested examination. *Cf. Pickens v. State,* 675 P.2d 665, 669 (Alaska App.1984) (requiring a specific showing of good cause to justify psychiatric evaluation of sexual assault victim); Alaska Criminal Rule 15(a) (allowing depositions in criminal cases only "[u]pon order of the court for good cause shown").

In the present case, the prosecution represented that, at the time of the Johnsons' trial, L.K. continued to maintain the truthfulness of her prior claims of sexual abuse. There is nothing in the record to suggest the likelihood, or even the possibility, of a recantation. The mere existence of two generically similar reports of sexual assault made almost fourteen years before L.K.'s current accusation hardly amounts to colorable grounds for believing that *in camera* examination of L.K. was necessary under A.R.E. 404(a)(2)(ii).

■ The Johnsons next contend that they were prejudiced by Judge Gonzalez' refusal to allow them to cross-examine L.K. about physical abuse inflicted upon her by a man

with whom she lived. At trial, the prosecution sought to corroborate L.K.'s claim of sexual assault by proving that L.K. had fresh bruises on her shoulder and thigh when she reported the crime. The Johnsons, in turn, sought to question L.K. about her abusive relationship with a man named Ronald Ivanof. They contended that the inquiry was relevant because Ivanof might have caused L.K.'s bruises. In addition, they argued that L.K.'s fear of abuse from Ivanof might have motivated her to fabricate her claim of sexual assault.

Judge Gonzalez allowed limited inquiry into the area. Defense counsel were allowed to establish that L.K. was involved in a sexual relationship with Ivanof, that in fact Ivanof was the father of two of L.K.'s children, that L.K. had left her three children with Ivanof on the night of the alleged assault, and that Ivanof had physically abused L.K. at times, both before and after the date of the alleged assault. Although L.K. initially denied ever seeking medical treatment following Ivanof's abuse, the defense was allowed to refresh her recollection with medical records showing that she received treatment for injuries she had attributed to him. L.K. also admitted to seeking an emergency injunction against Ivanof approximately two weeks after the August 22 incident.

Judge Gonzalez did not allow the Johnsons to prove the exact duration of L.K.'s abusive relationship with Ivanof. The judge also precluded them from dwelling on the details of Ivanof's abusive conduct toward L.K., and refused to allow the defense to ask L.K. whether she had acted as Ivanof's third-party custodian on a recent occasion, apparently after Ivanof had been arrested for abusing her.

The Johnsons argue on appeal that these limitations prevented them from identifying Ivanof as a potential source of L.K.'s bruises and from establishing L.K.'s motive to claim falsely that she had been raped. They contend that their right of confrontation was thereby violated. See Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Yet the Johnsons fail to specify how the restrictions placed on their cross-examination impeded their ability to get their point

across to the jury. The scope of cross-examination that the trial court actually allowed made Ivanof's identity as a potential source of L.K.'s injuries abundantly clear. The jury's awareness of L.K.'s relationship with Ivanof, and of its abusive character, made obvious L.K.'s possible motive to concoct her claim of rape in order to prevent Ivanof from learning that she had had consensual sexual intercourse with John Johnson. Based on the evidence presented, counsel were able to argue these points fully to the jury. Allowing the Johnsons to hammer longer on the details of the relationship between Ivanof and L.K. certainly would have enabled them to pound a few extra nails, with much attendant noise, into a plank they had already securely fixed in place; but it would have added no new material to the structure of their defense case.

■■ Limitations on the right to cross-examination amount to constitutional error when they impair the accused's ability to establish bias, prejudice, or motive. Davis, 415 U.S. at 316–18, 94 S.Ct. at 1110–11. However, the scope of cross-examination is generally a matter within the trial court's discretion. Stumpf v. State, 749 P.2d 880, 901 (Alaska App.1988). An abuse of discretion occurs only when the jury fails to receive adequate information to allow it to understand and evaluate fairly a witness' potential bias, prejudice, or motive. Id. (citing United States v. Ray, 731 F.2d 1361, 1364–65 (9th Cir.1984)). Applying this standard here, we find no abuse of discretion.

■ The Johnsons next argue that Judge Gonzalez erred in excluding evidence that L.K. had filed a false claim of paternity in 1985, more than seven years before the current offense. The Johnsons offered to call Lee Warren Palmer as a defense witness. Palmer would have testified that he was involved in a romantic relationship with L.K. from 1981 until 1983 or 1984 and that in early 1985, after the relationship had ended, L.K. filed a paternity claim against him. According to Palmer, a blood test eventually proved that he was not the father, and the case was dismissed. Palmer claimed that, a short time later, L.K. told him that she had known

he was not the father but had named him because she had to name someone.

Judge Gonzalez ruled this evidence inadmissible because the allegation involved in the former case was dissimilar to L.K.'s current allegation, and because the former allegation was too remote and "would lead to confusion of the issues that are before the jury."

Alaska Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This rule gives the trial court broad discretion to restrict the admission of relevant evidence if its probative value is outweighed by unfair prejudice or confusion of the issues. *Brown v. State,* 779 P.2d 801, 803–04 (Alaska App.1989). *See, e.g., Lerchenstein v. State,* 770 P.2d 1150, 1153 (Alaska App.1989). When properly applied, Alaska Rule of Evidence 403 does not violate a defendant's constitutional right to confrontation. *Larson v. State,* 656 P.2d 571, 575 (Alaska App.1982). A trial judge's ruling on the admissibility of evidence will be reversed only when a clear abuse of discretion has been shown. *Kvasnikoff v. State,* 674 P.2d 302, 304–05 (Alaska App.1983).

■ The evidence of L.K.'s previous paternity claim that was proffered in this case had no logical bearing on L.K.'s bias, prejudice, or motive to fabricate; given its remoteness in time and dissimilarity to the circumstances of the current case, it did not establish a pattern or scheme of falsification on L.K.'s part. At most, the evidence amounted to character evidence reflecting negatively on L.K.'s general credibility. As such, however, the evidence of L.K.'s past misconduct was classic propensity evidence and was therefore inadmissible. A.R.E. 404(b)(1); A.R.E. 608(b).[2] Under A.R.E. 608(a), the Johnsons

were free to ask Palmer to state his opinion of L.K.'s credibility, or to testify as to L.K.'s reputation for truthfulness. But they had no right to impeach L.K.'s credibility by recourse to evidence of specific incidents of past misconduct. Exclusion of the disputed evidence did not amount to error. *See Latham v. State,* 790 P.2d 717, 721–22 (Alaska App.1990).

■ Prior to trial, Russell Johnson moved for production of a presentence report that had been prepared upon L.K.'s conviction of third-degree assault in 1981. In moving for production of the report, Russell Johnson argued that it

may contain information affecting L.K.'s credibility in that there may be other misdemeanor convictions involving dishonesty or false statement, other verified police contacts, drug and alcohol records, psychological or psychiatric records, or situations where she may have provided false information to the presentence officer.

In response, the state pointed out that the conviction for which the presentence report had been prepared was over eleven years old, and the defense already had been provided with a copy of L.K.'s criminal history. Judge Gonzalez subsequently issued a summary written order denying the motion. Russell Johnson claims that the court erred in its ruling.

■ Alaska Criminal Rule 16 permits the state to withhold disclosure of records whose contents are potentially discoverable only if a two-step procedure has been met: first, the state must make a threshold showing of good cause to maintain the records' confidentiality; second, if, but only if, such a showing is made, the trial judge must review the records *in camera* and determine that the material therein is not relevant. *Braham v. State,* 571 P.2d 631, 643 (Alaska 1977).

In the present case, the first step of this procedure was obviously met, since disclosure of presentence reports is expressly re-

---

**2.** Alaska Rule of Evidence 608(b) allows specific instances of conduct probative of truthfulness or untruthfulness to be admitted to attack or support a witness' credibility only after the witness' general character for truthfulness or untruthful-

ness has been placed into issue. *See Snyder v. Foote,* 822 P.2d 1353, 1359 (Alaska 1991). Here, the state did not place L.K.'s character for truthfulness into issue.

stricted by rule. *See* Alaska Criminal Rule 32(d)(2). With respect to the second step of the *Braham* procedure, however, the record is uncertain. The presentence report itself has never been made a part of the court record. The state's copy of the original report was apparently archived in Juneau and not immediately available to the prosecutor in the Johnsons' case when the state responded to Russell Johnson's motion for production. It is unclear from the record whether Judge Gonzalez reviewed, or even had ready access to, the court system's copy of the report.

Although the age of the disputed report in this case makes it highly unlikely that it contains any information that would be deemed discoverable, it is impossible to say with certainty that no discoverable information would be found upon *in camera* review by the trial court. Accordingly, we think it necessary to remand this issue to the trial court.[3] If the court has already conducted an *in camera* review of the presentence report, it should so indicate on remand; a sealed copy of the report should then be included in the court record. If the court has not yet conducted such a review, it should do so and make appropriate findings.[4] We will retain jurisdiction over Russell Johnson's appeal pending completion of the remand.

■ We lastly address John Johnson's claim that his sentence was excessive. John Johnson was convicted of first-degree sexual assault and kidnapping. First-degree sexual assault is an unclassified felony punishable by incarceration for up to thirty years. AS 11.41.410(b); AS 12.55.125(i). As a first offender, Johnson was subject to a presump-

tive term of eight years on the sexual assault charge. AS 12.55.125(i)(1). Kidnapping is an unclassified felony separately punishable by a maximum of ninety-nine years' imprisonment and by a minimum of five. AS 11.41.300(c); AS 12.55.125(b).

For first-degree sexual assault, Judge Gonzalez sentenced John Johnson to the presumptive term of eight years. Because Johnson established no mitigating factors or exceptional circumstances, the sentencing court could not have imposed a lesser term. *See State v. LaPorte,* 672 P.2d 466, 467 (Alaska App.1983). The court sentenced Johnson to the minimum term of five years for his kidnapping and ordered two years of that sentence to be served consecutively to the eight-year term for sexual assault, for a composite term of ten years. Thus, for his commission of the separate unclassified crime of kidnapping, Johnson in effect received only two years beyond the minimum composite term the sentencing court was empowered to impose.

Even if, as John Johnson proposes, we view the kidnapping, not as a separate crime, but merely as a circumstance aggravating Johnson's sexual assault, Johnson's total term of ten years hardly seems beyond the zone of reasonableness within which the sentencing court may properly exercise its discretion. Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

John J. Johnson's conviction and sentence are AFFIRMED. As to Russell G. Johnson,

---

**3.** The state appears to argue that information contained in presentence reports should be categorically barred from the discovery provisions of Criminal Rule 16. In support of this argument, the state cites several federal cases barring disclosure of federal presentence reports except upon a compelling showing of necessity. *See, e.g., United States v. Charmer Indus., Inc.,* 711 F.2d 1164, 1175 (2d Cir.1983).

Criminal discovery in federal cases, however, differs significantly from discovery as prescribed by Alaska Criminal Rule 16. We see no basis for categorically exempting presentence reports from the *in camera* review procedure set out in *Braham*. Such a review, when called for, will

not be unduly burdensome on the trial court; nor is the court's *in camera* review of an already existing court record likely to result in more than a *de minimis* incremental incursion on the privacy interests of the person who is the subject of the report.

**4.** In the unlikely event that *in camera* review yields discoverable information that was not previously available to Russell Johnson from another source, the superior court should permit the parties to argue its significance and may, in its discretion, entertain a motion by Russell Johnson for a new trial based on the information.

this case is REMANDED for further proceedings.