**Jon McINTYRE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–6065.**

Court of Appeals of Alaska.

March 28, 1997.

James H. Cannon, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Sara L. Gehrig, Assistant District Attorney, Harry L. Davis, District Attorney, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

A jury convicted Jon McIntyre of fourth-degree assault, a class A misdemeanor. AS 11.41.230. McIntyre appeals, contending that District Court Judge Charles R. Pengilly erred by prohibiting cross-examination into a witness's potential bias in favor of the victim. We reverse.

In the evening of August 9, 1995, McIntyre's wife, L.M., was playing Scrabble at the home of a neighbor, S.D., a woman with whom the McIntyres socialized. The three had been drinking together at the McIntyre home earlier in the evening. McIntyre arrived at S.D.'s home and, after a further period of socializing and drinking, stated that he wanted to take the two young McIntyre children, who were spending the night at S.D.'s home with S.D.'s children, back to the McIntyre home. L.M. disagreed, saying that

their sleeping children should not be disturbed and should remain.

L.M. testified that she and McIntyre eventually agreed that their children would stay at S.D.'s house, and the two left S.D.'s house together; however, as soon as they were outside, McIntyre began to yell at L.M. and punched her in the face with his fist, choked her with both hands, and threatened to kill her. McIntyre, in contrast, testified that he went outside first to start the McIntyres' car to drive their children home, and that as he returned to the house, L.M. punched him several times in the face and jumped onto him. He testified that he struck her once in the face in self-defense and "flipped" her off of him. In any event, S.D., who was still inside her house, saw the commotion, telephoned the troopers, and called out that she had done so. McIntyre then fled the scene. The troopers located McIntyre three days later.

After L.M. testified, S.D. corroborated L.M.'s version of the events. S.D. testified that McIntyre and L.M. left her house after arguing about the children. She then heard L.M. screaming and saw through the picture window that McIntyre was choking L.M. S.D. testified, on direct examination, that she had known and been friends with McIntyre years longer than with L.M., and that being involved in the trial placed her in an "uncomfortable position" because she did not "want to take sides" with either friend against the other. S.D. testified that she was simply telling the truth about what she had seen. S.D. also testified that she had not cared one way or the other about the McIntyres' argument concerning where their children would stay the night. On redirect examination, S.D. testified that she was not fabricating her testimony and that she felt loyalty to both her friends, L.M. and McIntyre, and was not willing to lie on either friend's behalf against the other.

After S.D.'s testimony and cross-examination, McIntyre asked Judge Pengilly, out of the presence of the jury, to allow him to inquire into and testify on the issue of S.D.'s bias in favor of L.M. McIntyre claimed, and offered to testify, that L.M. was bisexual, and that just before the assault in this case he had seen through the picture window that L.M. and S.D. were "making out." He claimed that L.M. and S.D. were involved in a romantic relationship.

Judge Pengilly asked McIntyre to specify what probative value such testimony would have regarding any material fact in the case. McIntyre responded that evidence of S.D.'s bias toward L.M. would cast doubt on S.D.'s corroborating account of certain disputed details of the evening, such as whether McIntyre ever re-entered S.D.'s house or handed S.D. L.M.'s glasses.

The prosecutor did not dispute the allegation that L.M. was bisexual but represented that S.D. was heterosexual. The prosecutor contended that McIntyre sought merely to prejudicially stigmatize S.D. and L.M. The prosecutor also argued that even if S.D. had been involved in a romantic relationship with L.M. and was biased, this was not sufficiently relevant because the details of S.D.'s testimony that McIntyre sought to question went only to collateral issues. Judge Pengilly ruled that he saw minimal or no probative value in evidence that S.D. had given biased testimony about matters "verg[ing] on the trivial," such as whether McIntyre had handed S.D. L.M.'s glasses. He found that the potential prejudicial effect of evidence of L.M.'s sexual orientation was "really extreme" and "enormous," especially in light of a recent controversy in the community about sexual orientation, and so ruled that such evidence would not be admitted.

McIntyre appeals, contending that Judge Pengilly erred by refusing to allow him to inquire into S.D.'s possible bias. A defendant's constitutional right to confront and cross-examine witnesses is violated when a trial court's restrictions on cross-examination impair the defendant's ability to establish the witness's bias. *Davis v. Alaska*, 415 U.S. 308, 316–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974); *Johnson v. State*, 889 P.2d 1076, 1080 (Alaska App.1995); *Wood v. State*, 837 P.2d 743, 745–47 (Alaska App. 1992). However, a trial judge has broad discretion to exclude relevant evidence of a witness's bias under Alaska Evidence Rule 403 if the probative force of that evidence is outweighed by the danger of unfair preju-

dice. *Kameroff v. State,* 926 P.2d 1174, 1179 (Alaska App.1996); *Beltz v. State,* 895 P.2d 513, 518 (Alaska App.1995); *Johnson,* 889 P.2d at 1080–81. Trial judges retain wide latitude to impose reasonable limits on cross-examination to protect against prejudice. *Kameroff,* 926 P.2d at 1179–80; *Wood,* 837 P.2d at 746–47. We will not reverse a trial judge's exercise of discretion in regulating cross-examination into bias unless the jury did not otherwise receive information adequate to allow it to evaluate the bias and motives of a witness. *Beltz,* 895 P.2d at 518; *Johnson,* 889 P.2d at 1080; *Stumpf v. State,* 749 P.2d 880, 901 (Alaska App.1988).

On appeal, McIntyre does not challenge Judge Pengilly's finding that evidence of and inquiry into L.M.'s and S.D.'s sexual orientation and possible relationship had a potential for "really extreme" and "enormous" prejudice. Rather, McIntyre contends that such evidence was highly probative of S.D.'s bias, and that in this case Judge Pengilly unreasonably prohibited all inquiry into the specific area of S.D.'s possible bias due to a sexual relationship with L.M. *See Kameroff,* 926 P.2d at 1179–80 (reversing because the court precluded all inquiry into a witness's probation status); *Wood,* 837 P.2d at 746–47 (reversing because the court precluded all inquiry into a witness's informal juvenile probation status under a conduct agreement).

■ On consideration of the record in this case, we agree that Judge Pengilly abused his discretion by precluding all inquiry into S.D.'s possible bias in favor of L.M. The evidence of S.D.'s bias had significant probative value. While Judge Pengilly could properly find that evidence of a sexual relationship beween L.M. and S.D. could have prejudiced the jury against them, he erred in ruling that this potential prejudice outweighed the probative value of the evidence.

■ The bias of a witness toward a party is always relevant to the jury's consideration of the case; it is never a collateral issue. *Wood,* 837 P.2d at 745; *Jackson v. State,* 695 P.2d 227, 230 (Alaska App.1985). If a witness has a romantic relationship with a party, or any other emotional attachment to a party, that fact is clearly a source of potential bias; the jury should be aware of such evidence in order to fully evaluate the witness's testimony. This is true regardless of whether the witness and the party are of the same sex or of opposite sexes.

■ We recognize that evidence of same-sex romantic relationships may tend to prejudice or inflame the jury. Trial judges have considerable discretion to regulate the presentation of this evidence so as to limit its unfair prejudicial impact. However, when evidence of a romantic relationship tends to establish a witness's potential bias, and no other evidence is available to establish the same bias, a court may not wholly exclude inquiry into the relationship.[1]

1. *See Orkin Exterminating Co. v. McIntosh,* 215 Ga.App. 587, 452 S.E.2d 159, 165 (1994); *see also State v. Wargo,* 140 Ariz. 70, 680 P.2d 206, 209 (App.1984); *Watkins v. State,* 206 Ga.App. 701, 426 S.E.2d 238, 243 (1992); *Vaughn v. State,* 888 S.W.2d 62, 74–75 (Tex.App.1994); *Riggins v. State,* 107 Nev. 178, 808 P.2d 535, 539 (1991), *rev'd on other grounds,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992); *State v. Becraft,* 33 N.C.App. 709, 236 S.E.2d 306, 306–07 (1977). *But see People v. Whalen,* 390 Mich. 672, 213 N.W.2d 116, 122–24 (1973); *State v. Wilfong,* 68 N.C.App. 681, 315 S.E.2d 753, 755–56 (1984) (lesbian relationships irrelevant or unsupported in both cases).

*Cf. Kvasnikoff v. State,* 674 P.2d 302, 305–06 (Alaska App.1983) ("The trial judge in this case had the difficult task of weighing the probative value of evidence which indicated that the defendant had engaged in other homosexual conduct, against the danger of undue prejudice, i.e., that the jury might presume consent simply as a result of their own prejudices or hostilities against homosexuals, and confusion of the issues.... The trial judge in this case was understandably concerned that the main issue in the trial would become the sexuality of the victim rather than the conduct of the defendant on the occasion in question."). The *Kvasnikoff* case, however, is distinguishable from this case. Kvasnikoff sought to introduce evidence of the rape victim's homosexuality in order to bolster his consent defense. This court upheld the trial court's decision to exclude the evidence for that purpose as irrelevant under the rape shield law. Kvasnikoff did not seek to introduce the evidence to establish a witness's bias. *Id.* at 306 n. 7. This court later noted that the rape shield law is inapplicable to evidence directly intended to establish bias. *Daniels v. State,* 767 P.2d 1163, 1167 n. 2 (Alaska App.1989).

We caution that the proponent of such evidence is not entitled to present baseless accusations or unfounded speculation. The trial judge may require a party to give advance notice of its intent to introduce such evidence. As a foundational matter, the proponent of any potentially prejudicial evidence should normally be required to establish a good-faith factual basis before commencing inquiry into the area. In the present case, however, McIntyre clearly offered to provide a factual basis supporting inquiry into the possible existence of a romantic relationship between L.M. and S.D. McIntyre offered to take the stand and testify that his wife was bisexual and that he had personally observed L.M. and S.D. "making out." Such voir dire testimony would have established a foundation for allowing McIntyre to cross-examine S.D. about these matters.

The state contends that, even if S.D. and L.M. had been sexually involved, this would not have been important in evaluating S.D.'s testimony. However, although S.D. did not testify that she knew who first assaulted whom, S.D. did testify that she looked out the window and saw McIntyre choking L.M. McIntyre denied ever choking L.M. or placing his hands around her neck. The issue of whether McIntyre choked L.M. was disputed at trial and did not "verge on the trivial." This point was clearly important to the jury's appraisal of McIntyre's claim of self-defense, the central disputed issue in the case.

Evidence that S.D. was romantically involved with L.M., and thus was potentially biased in favor of L.M., would be relevant both to the jury's assessment of S.D.'s credibility and to its assessment of McIntyre's guilt or innocence. Judge Pengilly precluded McIntyre from presenting any evidence on this point. We conclude that this decision was an abuse of discretion, and we therefore REVERSE McIntyre's conviction.